Admixture v. Advanced Cardiothoracic Surgery Mr. Williamson, you can begin whenever you're ready, but I just want to confirm, you have five minutes to follow, correct? That's correct. Okay. May it please the court, Brett Williamson of O'Melton A. Myers, LLP, on behalf of the Plaintiffs and Appellants, Central Admixture Pharmacy Services, Inc., and Dr. Gerald Buckford. The parties are here for a second time on this case because the district court ignored this court's mandate the first time around. In your prior decision on appeal, you explicitly and unequivocally directed the district court on remand to conduct a, quote, redetermination of infringement under the patent's original uncorrected claims, unquote. And that's only one of three separate expressed statements in the opinion to that effect. But the district court did not make such a determination, but instead dismissed the case based solely on its erroneous conclusion that caps, which I'll refer to as a plaintiff's hearing. Do we have footnote seven in our opinion, which is a pendant of the second reference? Like I said, on remand, the infringement inquiry should concede on the original authority burden of the claim. In footnote seven, do you have a text of the current claim? I do. It's a 23 attached to your appendix. Do you agree? Yes. Footnote seven? Yeah, footnote seven. The issues there that you're talking about, the things that our court did not address the first time around, don't those go to the question of infringement? They do go to the question of infringement, and they are left for the district court to consider. The issue- I mean, I was thinking you would argue not only that we have three places in our opinion to say, we want to go back, let's try the pre-condemned claim, but here are issues that relate to that. I would agree with the court. I mean, it's expressly stated on three different occasions that it's supposed to be a determination of infringement. No, we didn't intend to have the issue of litigating a footnote to surplus it. I would agree. And the appellees here don't dispute the nature of this court's mandate. They simply try to turn the district court's dismissal order into an interpretation of the mandate. Well, then I'm thinking from their basis that there was nothing in the mandate that required a determination on the merits of the infringement claim. And they could very well be asking for sanctions against you unless they took that position. Well, if they are taking that position, then I would submit that it's untenable because it's a complete misreading of the express statement. That's what the appeal is all about. Well, we would contend, Your Honor, that certainly if that is what the appellees contend, then the opposition is not submitted in good faith. I mean, the mandate is expressed. So crediting some argument— Well, the mandate did not direct the district court to amend the pleading, did it? No, it did not. That's correct. And so your adversary is saying, well, unless the mandate had actually told the district court that it had to amend the pleadings to bring back into play the pre-COC infringement issue, then there's nothing in our opinion that just works. In their perspective, re-determined meant that you have to come back and agree—you have to say to somebody, oh, what issues are left for play to allow you the opportunity to say you think you're entitled to a trial and that the trial doesn't stay under the law. And we would say that that's simply not the law. The law has never required this court or any appellate court to specify with that sort of detail what the district court is supposed to do on remand. Here, it was more explicit than many mandates. And we would argue that that is really the only issue that this court needs to address, and under clear authority, Briggs, and other cases, there was no discretion in the district court. I thought it was pretty clear. Your Honor, you would know you were one of the members of the prior panel, so you kept submits and— I would also offer the opinion, so I think I know what was in there, is specific language instructing the district court what to do. Well, you know, based upon that, it's clearly the position to capture that. I would submit on that argument, and I will let the rest of my time go by. I know that you didn't argue in response to the actual motion for sanctions. You didn't argue that the motion itself was frivolous, right? You simply moved to strike it on a procedural ground? Actually, the response by Capps was, in the first instance, a motion to strike. And we did present a very brief argument, simply pointing out that this court's decision, and by that, and other decisions, would hold that there just needs to be an arguable basis for an appeal, for it to be made in good faith. But you yourself are not pressing sanctions against your adversary for having filed a frivolous motion seeking sanctions. We are not. We felt that enough was enough. Thank you, Mr. Williams. We'll move to the other side. Mr. Deal? Okay. Bill, let me ask you. You have these three provisions in our original opinion. I realize you have a different view of the original opinion, but, I mean, how can you really say that this appeal is frivolous? I mean, you heard the discussion, and you see the provisions. Yes, Your Honor. I'm leaving aside the merits of who ultimately may prevail here. I have difficulty seeing how anyone can say that this appeal is a frivolous appeal. Your Honor, I mean, why did you advance that? Because we honestly believed, Your Honor. But in the face of these, what was just read? Yes, Your Honor. On what basis do you think it's frivolous in view of that language? Because you heard what Judge Garza just said. Yes, Your Honor. I did hear what Judge Garza just said, and I respect what Judge Garza just said. When we filed our claim for frivolous sanctions against him, we honestly believed that the District Court had complied with the mandate. Still do. I don't mean to disparage what you say, Your Honor, at all. But what the District Court did was say, gentlemen, you're back in the court. Tell us what the issues are. We briefed the issues that we thought were present. They briefed the issues they thought were present. The judge looked at it and said, little to their argument is based on what we said in our appeal, the mandate. Yes, Your Honor. It's hard for me to see how one can look at this language, the three places in our opinion, and say that the appeal is frivolous. You can say they're wrong, but to say it's a frivolous appeal. Well, Your Honor, we said— Well, if you look at page 5 of your motion, you'll see in the whole of the grammar, you say the reason why it has to appeal frivolous is because it cited a case law statute of provision that allows the party to automatically rely on a claim that purportedly is frivolous. That's correct, Your Honor. That's the whole premise of your argument that it's frivolous. And at that point, Your Honor, we were of the opinion that the court—this court had said to the district court, you may not use osmolality, the corrective claims, in deciding this case. You must go back and decide this case based on the osmolarity claims. And we're of the opinion that the district court looked at the prior proceedings, determined that there was no literal infringement. We submitted to the district court that because there was no literal infringement and because the question of the doctrine of equivalence had been before the district court prior to the pretrial order and withdrawn by the plaintiffs, that they had waived that order. All of which we knew. Right. In the case that was out there before. We argued— In the case that was out there before, we had the record from the proceeding below. Yes, you did, Your Honor. And we knew that there had been a desire to go and see if you can amend the claims. And we knew that if that was successful and the district court said it was successful, then we knew the cash was going to throw away its pre-amendment DOE order. And the reason we're going for the amendment was because the claim didn't read on the accused's stuff right before the amendment. It looked—it was close, but it didn't meet it. Correct. And so anybody who was capable of reading a record when the case came up here would have known that the only pre-COC issue left on the earth would be the DOE. Correct, Your Honor. And it's our premise that when they were at the district court, they had the opportunity then to litigate that claim. And they said, no, we don't want to— There's no question about that. They don't deny that they took it off the table. They say, we took it off the table, whether they took it off the table for some strategic or some reason that you believe they did. So what? They're saying, lucky us. The Federal Circuit put it back on the table. We did not understand the Federal Circuit put it on the table. I know you didn't, but that's the question. Well, we understood. And to say that the brief with the appeal was frivolous because the only rule they cited was the mandate rule. And the mandate rule works, right? If a public court says to a trial court, when this case goes back, we're going to try a particular issue. Then it doesn't make any difference if that issue had been taken out of the case earlier, does it? Your Honor— Doesn't the mandate override the district court's discretion? If the mandate is clear. If the mandate is clear, you're certainly right, Your Honor. We said, in our minds, redetermine if the district court— I'm just trying to make it clear. You're now saying that the reason behind the appeal of frivolous is because you disagree with Cass as to whether or not the mandate is clear. Our interpretation of the mandate and the court's interpretation of the mandate was that the court was free to redetermine— Absolutely right, Your Honor. It is your mandate and it's your office's mandate. That is a little risky, Your Honor. The second issue that we had was the doctrine of frivolous, the issue itself, as to whether the doctrine— Mr. Field? Yes, Your Honor. Would you like to withdraw your motion for sanctions?  Sure. We'll withdraw the motion. Okay. Let's go on. I would hope that when the hearing is over, there are a couple more hearings. Some of them are supposed to direct you to where the clerk's office is. Would you go to the clerk's office and enter the withdrawal? Certainly. By the time I get back to my chambers, I know it's withdrawn. We'll do, Your Honor. Because I know how to draft a show of balls very fast. I understand, Your Honor. Would you make it to the clerk's office before I get back to my chambers? I will certainly try, Your Honor. I'll be certain to present this in good faith. We did not— I won't be back here until 2 o'clock. I'll be down there as soon as— But do withdraw that because I think that would be your best course. Thank you. I will do so. Again, it is—on that issue, I fully understand that the court, from what you've said to me now, doesn't give much credence to the fact that the pretrial order did not include this right and that it was withdrawn. I agree with you that with the statement in your motion to say that our opinion did not order the district court to revise its pretrial order. But it did seem to me that footnote 7, in our opinion, would be utter surpluses if the question was whether the trial judge had the discretion to decide whether to try the case or not. Well, Your Honor, I did take that footnote with the word to re-determine, to mean that the trial judge should go back and look at the record and determine what should be done with this case regarding infringement felon and the claim of hostility. And that's what we believe that she did. She went. She looked. She found no reason to say that what the plaintiffs went through should be reinstated. She took that as a matter of her discretion as to whether to amend her claim, her pretrial order or not. And so she determined with that claim, with Osmer Larratt in it, that there was nothing left in this case. She determined to dispose of the infringement issue on procedural grounds as opposed to the merits. That's correct, Your Honor. I don't disagree with your right to debate what is still amended. As you gathered from my earlier questions, I do debate the wisdom of the decision to seek sanctions in light of the debate simply being what is amended. Well, Your Honor, granted that Page 5 of the brief pointed that out, we also feel that there is no way, and obviously I can be wrong. I've been doing this case for 10 years in the district court, and I've been wrong many times in the past. When you get to the doctrine of equivalence at all in this case, there was an amendment in the prosecution of this case in which the patentee said, I have to amend my case to overcome the prior art that is cited against me. This prior art says that Osmer Larratties of this range are well-known by Dr. Buckford and his colleagues. They're tall in references. And the patentee said, in order to overcome these references, I amend my claim by saying that the Osmer Larrattie range must be at an increased level relative to the… That's not for us to decide. A big part? You're basically arguing that the DOE claim, maybe you don't want to argue it's frivolous, but you're arguing that the DOE claim that they have the merit to amend their claim to get over a prior art, and they surrender it, and they do the truth. Yes, Your Honor. Well, that, I think, is pretty clear that there are a lot of factors in this revelation that need to be weighed and measured. Your Honor, with all due respect, we have argued that to the district court many times, and we've argued it here, and this is a very simple amendment. It says the Osmer Larrattie is to be at an increased level, and it's in direct response to a rejection by the examiners on prior art, and they have not put forth any rebuttal under the FEDSCA requirements. At any time, we've argued this has to apply. This doesn't apply. They have not said it is tangential. They have not said it is not in direct response to the arguments. Do you have a Rule 11 motion pending in the district court against your adversary on this issue? No, Your Honor. Well, do that if you will. I don't think I do, Your Honor. Certainly like to get the gun out of the holster quick. Shot yourself in the foot in this court. I hope you don't do that in law. I certainly will not do that in law, Your Honor. But we thought it was a matter of law, given the clarity of the amendment that was made, that under FEDSCA, as interpreted by this court, they had not come back with any of the factual information that you're talking about that would entitle them to say it's not in law. He said go back and do it, and that has to be done now. So this is really, this is an argument you can make for the district court after all the evidence. And the only issue before us is did the court err in not allowing the case to go forward? And we've pretty much, I think you can see, feel it did. So the thing now is to let things go to the district court, and I would take Judge Clementry's advice to heart. Thank you very much. I appreciate it. Thank you. We'll wait for a rebuttal. Okay, thank you. Mr. Gooden, you'll head down to the clerk's office. Yes, sir. Okay.